STEVENS *v.* ARKANSAS POWER & LIGHT COMPANY.

4-5371                                    124 S. W. 2d. 972

Opinion delivered February 13, 1939.

*John S. Mosby,* for appellant.

*Coleman & Fraley,* for appellee.

HUMPHREYS, J. This suit was brought in the circuit court of Poinsett county by appellee against appellant to recover $541.38, for current and service furnished under a written contract entered into on April 20, 1935, and a supplemental agreement under date of September 7, 1935, reducing the rates, for operating a shingle mill at Lepanto. The rates specified in the written contract were:

"50c per hp per month connected; 30 first 60 kwh per hp connected at 2½c per kwh; 30 next 120 kwh per hp connected at 2c per kwh; Excess kwh at 1½c per kwh."

Appellant filed an answer denying the material allegations of the complaint and a cross-complaint, in substance, to the effect that he entered into a verbal contract with appellant to purchase from it a 50-horse power electric motor for $400, payable $100 cash and $25 per month, to operate a shingle mill at Lepanto and to pay for electric service or current at $4 for each 10 hours days' operation; that he dismantled his equipment designed for steam power, and appellee installed said electric motor; that thereafter, on the first day of each month, in violation of the terms of the oral agreement, appellant charged him rates in excess of $4 for each 10 hour days' operation over appellant's numerous protests; that appellant used the electric current until the motor ceased, and instead of repairing the motor appellee removed same, and by reason of the failure to repair same and the removal thereof, appellant was required to install steam engine to operate his shingle mill at the expense of $100 for a boiler, $125 for a steam engine, $40 for a smoke stack, $15 for steam pipes, $10 for water pump, $50 for brick, $75 for labor in the installation thereof, and at a loss of $500 in profits while installing same; that he paid $125 on the motor which he is entitled to recover; that under the oral contract appellant operated the motor sixty 10-hour days, and is indebted to appellee in the sum of $240 which he tendered, and it refused to accept; that appellant has paid appellee a total of $111.95, leaving a balance due of $128.05 which he tenders and offers to pay; that on account of the breach of the oral contract appellant is entitled to recover $915 damages and appellee $128.05 for current.

The record reflects that the terms of the contract for the purchase and installation of the motor and prices to be paid for current were talked over between appellant and W. H. Howze, the representative of appellee, several times before the motor was installed and connected with current, with the understanding that a written contract should be entered into and signed by the parties covering the terms agreed upon.

W. H. Howze testified the contract, as written, provided rates to be charged were the rates agreed upon

between the parties and appellant testified that he signed the written contract under the representation by W. H. Howze, that the technical words specifying the rate charged meant that the charge for current would not exceed $4 per day for each 10-hour day of operation. The rate for current specified and set up in the written contract is in the following words:

"50c per hp per month connected; 30 first 60 kwh per hp connected at 2½c per kwh; 30 next 120 kwh per hp connected at 2c per kwh; Excess kwh at 1½c per kwh."

There is no dispute that the motor was installed and current connected a few days before the written contract was executed, and that it was operated and not disconnected until in November, 1935, when it was struck by lightning.

The original bills or accounts were rendered under the terms of the written contract, two of which charges were paid by appellant under protest, but subsequently the rate was reduced one-half and the bill rendered in keeping with the reduction, showing a balance due for current in the sum of $541.38, for which amount this suit is brought.

Two letters were written demanding settlement for current on that basis which were ignored and not answered by appellant.

There is no dispute that appellant agreed to pay $400 for the motor, $100 cash and $25 per month for the unpaid purchase money which was evidenced by promissory notes.

Appellant paid $100 cash and one note, and under protest made two payments on the current furnished, as per charge under the written contract.

Appellant admitted signing the written contract, but testified that a copy was not delivered back to him, and for that reason was not a completed contract, and for the further reason that the technical words relating to prices of current were explained to him to mean that the charge for current was to be $4 per day for each 10-hour days' operation. Appellant testified to his ver-

sion of the oral contract, but admitted that the oral contract was talked over and agreed upon before the written contract was executed.

When appellant refused to pay for current and the motor was injured by lightning, appellee repossessed it by consent of appellant.

The written contract contained a provision that "this agreement supersedes all prior agreements between the company (appellee) and consumer for services mentioned herein," and the contract introduced in evidence was signed by appellant and appellee. Four copies of the contract were made including the original, but it seems that the company kept all of them and failed to return a copy to appellant. Cause was submitted to a jury upon instruction of the court resulting in a verdict and judgment against appellant for $416.28, from which is this appeal.

Appellant only asked one instruction which is as follows:

"You are instructed that the alleged written agreement sued upon and introduced in evidence is of no validity for the reason that at the time A. Stevens signed same, it had not been signed and accepted by the duly authorized agent of the company, and that since it was signed by the agent of the company, if it was signed by that agent; there was no execution or delivery to the defendant, as the evidence was undisputed that there were four copies, one being retained by the general office, two being retained by the local office, and no copy delivered to the defendant in this case," 'which request of the defendant was denied by the court, to which ruling of the court the defendant at the time excepted, and asked that his exceptions be noted of record, which was done.'

The court refused to give the instruction over appellant's objection. Appellant's argument is there was not a complete written contract, because he was not furnished a copy of it after the company had approved and signed it. There is no question that the contract was approved and signed by the company after it had been signed by the appellant. There is nothing in the contract

to the effect that it should not be a completed contract until a copy was delivered back to appellant. There is a provision in the contract that it should not be effective until approved and signed by the company. This was done, and we think became a completed contract when approved and signed by the company. It had already been approved and signed by the appellant. The court was, therefore, correct in assuming, as a matter of law, that the contract was complete when both parties approved and signed it; and was correct in refusing to give appellant's requested instruction.

Appellant also argues that the written contract was void on account of fraud practiced upon him. No fraud was alleged in the cross-complaint of appellant. It is true that appellant testified that he signed the contract because of the explanation of W. H. Howze relative to the technical words used in same as meaning that the rate for current would not exceed $4 per 10-hour day for operation, but this was not an attempt on his part to void the contract for fraud and responsive to any allegation of fraud, for none was alleged, but for the purpose of showing that he was to pay $4 per day for current for each 10-hour days' operation and to reduce appellee's recovery to that amount.

At the conclusion of the evidence the trial court, over the objection and exceptions of appellant, summed up the case as follows:

"The plaintiff in this case, The Arkansas Power & Light Company, sues the defendant, A. Stevens, for the purchase price of electric current that the plaintiff says that they furnished to defendant in accordance with the rates set out in the written contract herein introduced in evidence and the supplemental contract, and they say that the defendant owes to them at this time the sum of $541.38, which they say is due them by reason of electricity furnished under the contract offered in evidence and the supplemental deduction in rate. The defendant admits that he signed said contract, but denies that he owes them the said sum of $541.38 for the current used. He says that the electric motor mentioned in the written

contract was sold to him under the representation that it would not use in excess of $4 for each 10-hour day, and he says he relied on such representation and would not have bought said motor except for such representation, and that such representation was false, and in truth and in fact it used in excess of $4 worth of current for each 10-hour day, and he says he has surrendered said motor back to the plaintiff, and asked for a credit on any sum that the jury may find he owes plaintiff the amount that he has paid on the purchase price of said motor, which is admitted by all parties to be the sum of $125.''

Following the summation of the case the court, over the objection of appellant, gave the following instruction to the jury:

''If you find from the evidence in this case that the plaintiff did represent to the defendant as an inducement to get him to purchase said electric motor that the said electric motor would not use current in excess of $4 per day for each 10-hour day, and further find that such representation was false, and that the defendant believed such representation to be true, relied upon the same and purchased said motor on account of said representation, then you are told that he would be entitled to rescind the contract for the purchase of said motor and recover back from the plaintiff the amount that he had paid on said purchase price, which is the sum of $125. Otherwise, he would not be entitled to recover anything from the plaintiff by reason of the purchase of said motor. So in this case your verdict will be for the plaintiff for such sums as you may find from the evidence in this case that the defendant owes to the plaintiff for electric current used in accordance with the rate fixed in the written contract and the supplemental contract less the credit of $125, if you should find that the purchase of the motor was induced by fraud in accordance with the above instructions. If you find that it was not induced by fraud, then the plaintiff would be entitled to recover the full amount of such current used, with no credits deducted therefrom.''

We find no error either in the summation of the case by the trial court nor the instruction given by him relative to the issue as to the amount appellee should recover, if any, under the written contract as to rates for current. Especially is it a correct instruction in view of the fact that the oral contract contended for by appellant and all the terms thereof merged in the written contract under the provisions in the written contract. In other words, as we view the case, and as the trial court viewed it, there was no oral contract under the law and admissible evidence, covering rates for current used in the operation of the shingle mill.

No error appearing, the judgment is affirmed.